UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JEREMY MARTIN HAAR, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-1129 |
| | ) |
| ERIC WALTERS, WARDEN, FCI Pekin, | ) |
| | ) |
| Respondent. | ) |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Petitioner Jeremy Martin Haar's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1).

## I.   FACTUAL BACKGROUND[1]

Haar is serving a 180-month federal imprisonment sentence imposed by the District Court for the Central District of California. At the time he filed this petition, he was imprisoned at FCI Pekin in Pekin, Illinois.[2] His current projected release date is July 23, 2033. *See* Find an inmate, https://www.bop.gov/inmateloc/ (Reg. No. 08518-509) (last visited Oct. 30, 2025).

---

[1] Unless otherwise noted, the facts are taken from Respondent's brief. *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.").

[2] While Haar has now been transferred out of the Court's territorial jurisdiction, the Court maintains jurisdiction over Petitioner's Petition. *See In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

After his conviction, Haar entered the custody of the Bureau of Prisons (BOP) on August 29, 2022, and was placed at FCI Schuylkill in Gordon, Pennsylvania. Haar signed an Intake Screening Form on August 29, 2022 indicating that he had received "A BUREAU OF PRISONS 'ADMISSIONS AND ORIENTATION BOOKLET' DEFINING [HIS] 'RIGHTS AND RESPONSIBILITIES' AND THE 'PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE.'" Haar also received a copy of the FCI Schuylkill Inmate Admission & Orientation Handbook. The inmate handbook contained the rules for inmate calling, including that inmate telephone calls were subject to monitoring; that each inmate was allowed to have thirty approved numbers on his phone list; and that any "[t]hird party telephone contact," including three-way calls, was prohibited.

Haar was transferred to FCI Lewisburg on March 7, 2023, and placed in administrative detention. He stayed there for less than a month—leaving FCI Lewisburg on April 3, 2023. The relevant disciplinary proceedings occurred during this short stay at FCI Lewisburg.

On March 25, 2023, Haar made a phone call using the inmate telephone system. He first called someone on his approved telephone list. Then, after talking to that person for a few minutes, Haar said, "Call Mom please, so I can try to talk to her." When the first person had trouble finding the needed phone number, Haar provided it—a different number on his approved list. The first person then called that number, and the three individuals (Haar and the other two) continued talking for the remainder of the call.

After the call, a BOP employee prepared an incident report reciting the above facts and adding that "Inmate Haar has circumvented the phone monitoring procedures by

conducting a 3-way call." A different BOP employee gave the incident report to Haar on March 26, 2023, at 1530 hours. The incident report also advised Haar of his rights. (Doc. 10-2 at 11).

The Unit Discipline Committee (UDC) held a hearing on March 27, 2023, at 1150 hours. At this hearing, Haar told the UDC that "I never got a handbook[.] I don[']t know the rules." (Doc. 10-2 at 10). The UDC referred the matter to the Discipline Hearing Officer (DHO). At that time, the hearing officer gave Haar notice of his rights at the DHO discipline hearing and Haar acknowledged receipt of the notice in writing. (Doc. 10-2 at 12).

Haar's DHO hearing was held on March 28, 2023, at 1530 hours, before DHO Brian Chambers. Haar waived his rights to a staff representative and waived his right to call witnesses. (Doc. 10-2 at 14). The DHO Report summarized Haar's statement and said that "he is not disputing the accuracy of Section 11 of the incident report in this case." *Id.* He further explained what happened:

> I normally call home when I know both my mom and dad are going to be there. This time my mom wasn't home when I called so I asked my father to call her so I could talk to both of them. I know I shouldn't have done it, but I only get one telephone call each month in the SHU (Special Housing Unit) and I wanted to talk to both of my parents.

*Id*. However, in his Petition, Haar disputes that he actually said "I know I shouldn't have done it" as part of his statement. (Doc. 1 at 7).

After considering the evidence from the incident report and Haar's statement, the DHO concluded Haar "committed the prohibited act of Use of the Telephone for Abuses Other Than Illegal Activity Which Circumvent the Ability of Staff to Monitor Frequency

of Telephone Use, the Content of the Call, or the Number Called, Code 297." (Doc. 10-2 at 15–16). The DHO highlighted that "[t]hree-way or third-party telephone calling is prohibited, as the potential exists for inmates to place these three-way or third-party calls to numbers not on their approved telephone lists . . . ." *Id.* Further, three-way calling "hamper[s] the ability of staff to properly monitor inmate telephone calls, as even though staff may be able to monitor all parts of the telephone call, monitoring of the call becomes more complex as the staff member monitoring the call has to pay attention to multiple parties speaking during the call, as opposed to solely the inmate and the initial call recipient." *Id.* "Moreover," the DHO added, "the identities of the third parties are ordinarily unknown, and may not be on the inmate caller's approved contact list." *Id.* In addition to other sanctions, the DHO revoked 27 days of good conduct time.

Haar received a copy of the DHO's report and was notified of his appeal rights on April 13, 2023. Respondent does not contest that Haar exhausted available administrative remedies at the BOP.

Haar filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 while housed at FCI Pekin on March 27, 2024. (Doc. 1.) In the Petition, Haar raises four grounds for relief: (1) his disciplinary proceedings did not comply with due process because he did not receive notice of the charge at least twenty-four hours before the DHO hearing; (2) his decision maker was impartial, (3) he was not provided with fair notice of the rule banning three-way calling; and (4) the Prohibited Act 297 is unconstitutionally vague and does not specifically identify the conduct that violates it. Haar seeks expungement of the incident report and restoration of his good-conduct time.

Respondent filed a response in opposition to the Petition. (Doc. 10). Haar filed a reply wherein he concedes he received timely notice of the charge and but argues his remaining three claims have merit. (Doc. 15).

## II.  DISCUSSION

Challenges to the denial of good conduct time, are properly brought in a § 2241 petition. *Waletzki v. Keohane*, 13 F.3d 1079, 1081 (7th Cir. 1994). Federal prisoners have a statutory right to good conduct time and the loss of such credits affects a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 448 (1985); *see also Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011). Due process requires that prison administrators cannot revoke good time credits without "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (*citing Wolff,* 418 U.S. at 563-67). Further, the findings must be made by an impartial decisionmaker, *Wolff*, 418 U.S. at 570–71, and "supported by some evidence in the record." *Hill*, 472 U.S. at 454–55.

The record shows, and Haar now does not contend otherwise, that he was given advance written notice of the disciplinary charges, an opportunity to call witnesses and present documentary evidence in his defense, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Instead, Haar argues he was denied due process because his decisionmaker was impartial, he was not given

fair notice of the rules at the institution, and at the Prohibited Act 297 is unconstitutionally vague. However, as explained below, the Court finds Haar's disciplinary proceedings complied with the minimal due process standards and the rule is not unconstitutionally vague.

### A. Impartiality

Haar's alleges the DHO was not impartial because he said he "didn't care" in response to Haar's explanation that he did not know three-way calls were against the rules and that his specific conduct did not disrupt the monitoring of the call at issue since both numbers were on the approved list. (Doc. 1 at 7.) Haar alleges the DHO told him that "since the [disciplinary infraction] was written in the first place" it meant Haar "was obviously guilty" and the DHO said Haar was "guilty no matter what." *Id.* Haar also alleges that the DHO told him he never believes inmates because they lie. *Id.* Finally, Haar claims the DHO made up Haar's statement in the report where it said he knew he shouldn't have done the three-way call. *Id.*

While Haar was entitled to an impartial decisionmaker, *Wolff*, 418 U.S. at 570–71, "the constitutional standard for impermissible bias is high" because "[a]judicators are entitled to a presumption of honesty and integrity," *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986)). "To overcome that presumption, [a prisoner] need[s] to present clear evidence of bias." *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021). Bias can be shown where the adjudicator was "substantially involved in the investigation of the charges against an inmate." *Prude v. Meli*, 76 F.4th 648, 657–58 (7th Cir. 2023) (quoting

*Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). Moreover, the DHO is not permitted to "predetermine the hearing outcome" notwithstanding the evidence. *Prude v. Meli,* 76 F.4th 648, 658 (7th Cir. 2023) (finding summary judgment was not warranted on the issue of bias where there was significant evidence in the record that the DHO predetermined the inmate's guilt before the hearing without consideration of any evidence, told petitioner that he was not allowed to present any evidence, and started the hearing by telling the inmate that his "hands [were] tied" on the discipline to be ordered, which was the exact punishment later ordered).

In some contexts, some of the alleged comments the DHO said could demonstrate that the DHO predetermined the hearing outcome. However, the Court finds that within the context of the charge, the statements are not evidence of bias. Haar's infraction was straight-forward and he never disputed that a three-way call was placed. In similar cases, courts have found that commenting on guilt after viewing strong video evidence "was inappropriate" but "reflect[ed] confidence in the strength of the video evidence rather than proof of a biased or preordained decision without consideration of the evidence." *Gaines v. Pretorius*, No. 2:24-CV-00557-JMS-MG, 2025 WL 1312252, at *9 (S.D. Ind. May 6, 2025). The same is true here. If made, the DHO's comments that Haar "was obviously guilty" and "guilty no matter what" were inappropriate, but were made after reading the charge and the plain evidence that Haar violated the rule.

Moreover, the Court does not find the DHO's other comments to be evidence of bias. Haar alleges that the DHO said he "didn't care" about Haar's rationale for making the three-way calls and about Haar's arguments his specific conduct did not disrupt the

monitoring of the call at issue since both numbers were on the approved list. However, regardless of whether the DHO "cared" about Haar's explanations, they did not impact the result of the disciplinary hearing. Finally, Haar's allegation that the DHO incorrectly quoted Haar in the report as stating he knew he shouldn't have done the three-way call, if true, is also not clear evidence of bias as it is, in essence, irrelevant: Haar's guilt did not depend on whether he had knowledge that he should not have made the call. Accordingly, the Court does not find that the DHO's alleged comments are clear evidence of bias sufficient to overcome the presumption of an adjudicator's impartiality.

   B. Fair Notice

Haar next argues that he was not provided with fair notice of the rule banning three-way calling. Haar alleges that he "was never provided a copy of the rule book upon arrival at the institution" and did not attend an admission and orientation session at "the facility." (Doc. 1 at 7.) While it appears undisputed that Haar did not receive a copy of the rule book or attend an admission and orientation session *at FCI Lewisburg* during his one month stay there in March 2023, he did receive fair notice of the BOP's rules on August 2022 *at FCI Schuylkill*. Specifically, Haar signed an Intake Screening Form on August 29, 2022 indicating that he had received "A BUREAU OF PRISONS 'ADMISSIONS AND ORIENTATION BOOKLET' DEFINING [HIS] 'RIGHTS AND RESPONSIBILITIES' AND THE 'PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE.'" Haar also received a copy of the FCI Schuylkill Inmate Admission & Orientation Handbook. The inmate handbook contained the rules for inmate calling, including that inmate telephone calls were subject to monitoring; that each inmate was

allowed to have thirty approved numbers on his phone list; and that any "[t]hird party telephone contact," including three-way calls, was prohibited.

Haar does not explain why he believed the rules would be different at FCI Lewisburg versus FCI Schuylkill. Furthermore, the BOP Admissions and Orientation Booklet contained the prohibits acts and disciplinary severity scale of the BOP, which plainly applied to both BOP facilities. As Respondent argues "Haar's departure from FCI Schuylkill and his one-month stay at FCI Lewisburg did not eliminate his knowledge of the telephone prohibitions or excuse his non-compliance." (Doc. 10 at 20). The Court does not find any basis to hold that due process requires each institution to give him a rule book. *See Chambers v. Ciolli*, No. 20 CV 50135, 2021 WL 4192079, at *3 (N.D. Ill. Sept. 15, 2021) (finding that inmate was aware of BOP rules despite not being given a new rule book after entering a new institution). If Haar failed to learn the rules (or if he believed they should not apply to him for whatever reason), this failure cannot be blamed on a lack of fair notice.

### C.  Facial Vagueness Challenge

Finally, Haar brings a vagueness challenge. Vagueness principles extend to prison regulations. *Koutnik v. Brown*, 456 F.3d 777, 783–84 (7th Cir. 2006). A regulation must be sufficiently definite so "that ordinary people can understand what conduct is prohibited" and " establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner." *Id.* at 783 (quoting *Fuller by Fuller v. Decatur Pub. Sch. Bd. of Educ. Sch. Dist. 61*, 251 F.3d 662, 666 (7th Cir.2001)). However, prison officials are accorded greater flexibility "to ensure order and safety in a prison population." *Id.* at 783–84. "[T]he fact that [a]

regulation provides some latitude to prison officials in defining [prohibited conduct] does not render it void for vagueness." *Id.* at 783. Moreover, an inmate "who engaged in behavior unmistakably proscribed by a disputed regulation cannot mount a facial challenge." *Isby-Israel v. Finnan*, 347 F. App'x 253, 255 (7th Cir. 2009) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).

Haar argues that "[Prohibited Act] 297 is vague as it is to[o] broad and does not specifically state what conduct violates that rule." (Doc. 1 at 8.)[3]. Haar provides no further discussion explaining why he believes the rule is vague. Prohibited Act 297 prohibits:

> Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act.

BOP Program Statement 5270.09 at 48. While Prohibited Act 297 provides some latitude to prison officials, it is sufficiently definite. The rule allows the BOP to address creative attempts to "circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called." *Id.* And, even if there could be some circumstances where the rule could be applied vaguely, prohibiting three-way calling is a not a vague application of the rule: adding a third party plainly "circumvent[s] the ability of staff to monitor…the number called," and likely the "content of the call" as well. Accordingly, Haar's vagueness challenge fails as well.

---

[3] Haar also states that the rule is problematic because "[t]he BOP allows several different rule violations to fall under that one code." (Doc. 1 at 8). Grouping multiple violations under one rule does not relate to whether the rule is vague. To the extent that Haar takes issue with the formatting of the BOP's rules, he does not state a constitutional issue

### III.    CONCLUSION

For the reasons above, the Court DENIES Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1). The Clerk is directed to issue the judgment in favor of Respondent and CLOSE the case.

Signed on this 25th day of November 2025.

/s/ Colleen R. Lawless
Colleen R. Lawless
United States District Judge
